# Richmond

## JOHNNY SMITH v. PENDER L. SMITH.

March 15, 1954.

Record No. 4166.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*S. W. Tucker*, for the plaintiff in error.

*L. C. Harrell, Jr.*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Early in the year 1947, Johnny Smith, hereinafter called the tenant, entered into a verbal contract with Pender L. Smith, hereinafter called the landlord, under which the tenant was to cultivate the landlord's land by the year on shares. Under the arrangement the landlord was to furnish the land and one-half of the fertilizer, and the tenant was to furnish the team, equipment, labor, seed, and one-half of the fertilizer. In addition, the landlord was to furnish, at cost, certain tractor work needed for disking the land and dusting the peanut and cotton crops, and make advances to the tenant for labor, supplies and materials as they were needed during the year. The harvested crops were to be divided, and the tenant out of his share was to reimburse the landlord for tractor service rendered and advances made during the current year.

In January, 1952, by mutual consent this arrangement was terminated and a final accounting became necessary. In the meantime a running account of their transactions had been kept by the landlord who at the end of each calendar year gave the tenant an itemized statement of the account. Only the account for the year 1951 and that for January, 1952, are found in the record, but the landlord testified that

throughout the tenancy the books showed that the charges against the tenant always exceeded the credits, and that thus the tenant was always indebted to him. At the end of each calendar year the balance due by the tenant was carried forward to the next year. He stated that on September 1 of each year he added to the amount then due by the tenant a ten per cent "carrying charge," the total sum of which for the five years of the tenancy amounted to $998.06.[1] At the end of 1951 the tenant owed the landlord, including the accumulated carrying charges, $479.95.

As the result of certain additional charges and credits entered in January, 1952, the landlord claimed a balance of $683.33 due him at the time of the final accounting. The tenant disputed two of the additional charges, an item of $220 for rent on "corn land," and another for $68 due a local merchant. He admitted that at the time of the final settlement he owed the landlord a balance of $395.33, but claimed that when this amount was deducted from $998.06, the total amount of the carrying charges, the landlord was indebted to him in the sum of $602.73. To recover the last-named amount the tenant instituted the present action on March 5, 1952, by a warrant returnable to the trial justice court. From an adverse judgment of the trial justice the landlord appealed to the circuit court where the matter was heard *de novo* with a jury.

The position of the tenant was that the carrying charges

[1]

| | Amount due by tenant Sept. 1 | Added carrying charge |
|---|---|---|
| 1947 | $1,028.00 | $102.80 |
| 1948 | 2,165.33 | 216.53 |
| 1949 | 2,171.95 | 217.20 |
| 1950 | 2,391.81 | 239.18 |
| 1951 | 2,223.53 | 222.35 |
| | $9,980.62 | $998.06 |

constituted usurious interest which he was entitled to recover under Code, § 6-350[2]

The landlord contended that the carrying charges were not interest on the stated balances due by the tenant, but were added charges made for the tenant's use of certain farm equipment, pursuant to the terms of their contract. Moreover, the landlord contended, even if the charges were usurious interest the tenant's right of recovery thereto was barred by the terms of the statute (Code, § 6-350), because, he said, such charges had not been paid by the tenant within one year of the institution of the suit. The defendant landlord filed an account showing that the plaintiff tenant was indebted to him in the sum of $683.33.

The trial court submitted to the jury whether the carrying charges were in fact usurious interest as claimed by the tenant, or charges for the use of equipment as claimed by the landlord. It also submitted to the jury the issue of the tenant's liability for the two disputed items of the account. The jury resolved these issues in favor of the tenant and awarded him $602.73, the full amount claimed.

The trial court approved the jury's finding that the carry-charges were in fact illegal interest charges, but as indicated in its final order, took the view that the tenant's right of recovery was limited to the single carrying charge item of $222.35 entered on September 1, 1951, and that the remaining items were barred because they had not been paid "within one year next preceding the commencement of this suit." Accordingly, it entered final judgment for the landlord in the sum of $172.98, that being the difference between $395.33, the amount which the tenant admitted he owed exclusive of carrying charges, and the item of $222.35. To

---

[2] Code, § 6-350, provides in part: "If an excess beyond the lawful interest be paid in any case for the loan or forbearance of money or other thing, the person paying the same may in a suit or action brought within one year thereafter recover the full amount of such payment from the person with whom the contract was made or to whom the assurance was given; * * * "

review that judgment a writ of error was allowed the plaintiff tenant.

The defendant landlord has assigned cross-error to the action of the trial court in not setting aside the verdict of the jury and entering judgment in his favor for $683.33, the full amount he claimed.

■ There is ample evidence to support the jury's finding, approved by the trial court, that the carrying charges constituted an interest charge in excess of the six per cent per annum allowed by law. Code, §§ 6-346, 6-347. It is true that the landlord testified that such charges were not made as interest on the stated balances due, but were agreed charges for the use of his tractor, truck, and for other services rendered. However, there were circumstances which fully warranted the jury in not accepting such testimony. In the first place, the account for the year 1951, found in the record, shows specific charges against the tenant for "dusting" the crops and "disking" land, which the landlord testified were a part of the services for which the carrying charges were made. Moreover, it is highly significant that the carrying charge in each instance was exactly ten per cent of the stated balance then due by the tenant. There is no showing that a single item was in any way related to the quantum or value of the alleged services rendered. But that is not all. If these charges were not interest then the landlord, quite contrary to ordinary business custom, has exacted no interest charge whatsoever for the use of the considerable sums which he advanced over the years.

■ We are unable to agree with the holding of the trial court that the items of usurious interest other than the item of $222.35 charged on September 1, 1951, were paid more than one year prior to the institution of this action on March 5, 1952. Since there is no evidence of direct payment of the usurious charges as such, the trial court evidently concluded that the proper application of the payments or credits made by the tenant effected a payment of the disallowed items. We do not reach that conclusion.

The presumption is that "a payment was intended to be applied, or was actually applied, in such manner as was just and proper at the time of payment," that is, to a legal rather than an illegal demand. 70 C. J. S., Payment, § 108, p. 318. And where, as here, the creditor claimed that payments had been made on an illegal demand, the burden was on him to establish that fact. 40 Am. Jur., Payment, § 281, p. 896. "The principle of law which applies unappropriated payments first to discharge the interest due ordinarily does not operate in the case of usurious interest." 55 Am. Jur., Usury, § 151, p. 428.

Here there is no evidence that the credits which the landlord received from the tenant were intended to be applied, or were actually applied, by either party to any of the items of carrying charges. According to the figures testified to by the landlord, at no time prior to 1951 was the total of the credits sufficient to extinguish the total of the debits and thus effect a payment of any portion of the accumulated illegal carrying charges. On the contrary, it appears from the figures stated by him that at the end of each year prior to 1951 the amount of the tenant's indebtedness for advances and other legal demands exceeded the amount of his indebtedness for the illegal accumulated carrying charges,[3] and that at the end of each year this excess was carried forward to the next year and included in the total on which the ten per cent carrying charge was computed and added on September 1.

Not until December 15, 1951, did the credits exceed the

---

[3]

| | Bal. due Dec. 31 | Amt. due for accumulated carrying charges | Amt. due in excess of accumulated carrying charges |
|---|---|---|---|
| 1947 | $582.07 | $102.80 | $479.27 |
| 1948 | 895.45 | 319.33 | 576.12 |
| 1949 | 975.84 | 536.53 | 439.31 |
| 1950 | 836.21 | 775.71 | 60.50 |
| 1951 | 479.95 | 998.06 | Nothing |

amount of advances and leave any amount to be applied on the accumulated carrying charges. This was brought about, as the account filed by the landlord shows, by two substantial credits amounting to $3,161.58 and applied on December 15, 1951, which reduced the amount of the tenant's indebtedness from $3,371 to $209.42. Hence, it was not until this date that the application of credits effected a part payment of the accumulated charges or items of usurious interest. Accordingly, we hold that the tenant's action to recover the full amount of the items of usurious interest was brought within the one-year limitation fixed by the statute.

In his cross-assignment the landlord contends that his charge of $220, entered on January 21, 1952, for rent due on the land on which the tenant had raised corn during the previous season, should have been sustained. He testified that it had been agreed that so long as the tenancy continued no charge would be made against the tenant for rent on the land on which corn was raised; that should the tenant vacate the premises he must either share the corn with the landlord or pay the latter a reasonable rental for the use of the land; and that since the tenant had not shared the corn crop with him, he (the landlord) was entitled to a reasonable rental for the use of the land, which he fixed at $220. On the other hand, the tenant testified that under the agreement he was to have free use of the land for growing corn if he paid the fertilizer therefor, and that this he had done. The court submitted this plain question of fact to the jury and its verdict thereon is binding on us, as it was on the trial court.

The other charge which the landlord contends should have been sustained was likewise entered after the tenancy had been terminated, and was carried on his books as "Due Bloom Bros. $68." The testimony of the landlord with respect to this item is vague and unsatisfactory It is not shown what the item represents, although the context would indicate that it was for merchandise purchased by

someone from a local merchant. The brief on behalf of the tenant states, and it is not contradicted, that the charge was for merchandise purchased by the tenant and presumably charged to him. Although the landlord testified that he was "responsible for it," he admitted that he had not paid the item nor had he signed any memorandum which bound him to do so. Under these circumstances we cannot say that the verdict of the jury and the judgment of the trial court which disallowed the landlord's claim for the item were wrong.

The other cross-assignments of error are without merit.

For these reasons we are of opinion that the judgment of the trial court should be reversed, the verdict of the jury awarding the plaintiff tenant the sum of $602.73 reinstated, and final judgment for that amount entered in his favor with interest thereon from July 25, 1952, the date of the verdict. It is so ordered.

*Reversed and final judgment.*